**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 6, 2017

Via Electronic Filing and Hand Delivery

The Honorable Kiyo A. Matsumoto
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *United States* v. *Barclays Capital Inc., et al.*, Civ. No. 16-7057

Dear Judge Matsumoto:

In this unprecedented action presenting numerous issues of first impression, the Government brings claims against Barclays[1] under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").  The Government contends that Barclays committed a variety of predicate offenses under FIRREA—principally mail, wire, and bank fraud—by securitizing defective loans into 36 residential mortgage-backed securities.  The Government does so in a sprawling, nearly 200-page complaint that contains a mass of vague and conclusory allegations and advances a breathtakingly expansive view of the reach of federal law.

The Government's claims are without merit, and its theory of the case cannot be reconciled with its own factual allegations.  The Government's theory is that Barclays intentionally packed these securities with defective loans.  But by the Government's own admission, Barclays retained the riskiest piece of most of the securities and would suffer the first losses if the loans did not perform.  As the complaint also shows, Barclays declined to purchase and securitize a significant number of loans flagged for further review by its due-diligence vendors—contradicting the Government's contention that Barclays sought to securitize as many loans as possible in order to generate fees and appease its clients.  What is more, the offering documents for those securities show that Barclays made robust disclosures about the risks of investing in securities backed by subprime and other non-prime loans.

---

[1] The Government asserts claims against the following Barclays entities:  Barclays Capital Inc., Barclays Group US Inc., Barclays US LLC, Barclays Bank PLC, Barclays PLC, BCAP LLC, Securitized Asset Backed Receivables LLC, and Sutton Funding LLC.

The Honorable Kiyo A. Matsumoto -2-

The Government's complaint contains fatal pleading defects, and it relies on an insupportably broad interpretation of FIRREA. Barclays intends to move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on the following five grounds:

*First*, the complaint suffers from fundamental pleading deficiencies and thus fails to satisfy Rules 8 and 9(b). The complaint is a classic example of a "puzzle pleading," containing allegations of fraudulent misstatements so numerous and imprecise as to make them virtually impossible to understand. For example, the complaint incorporates 115 pages of appendices listing approximately 800 statements, without alleging how and why they were fraudulent. That alone requires dismissal of the complaint.

The complaint is also defective because it attempts to lump separate and distinct conduct by different Barclays business units into a single overarching "scheme." (Compl. ¶ 1.) For example, the complaint does not allege that a single person or division within Barclays conceived or directed a plan to securitize defective loans. To the contrary, it accepts that three different Barclays business units handled different subsets of the 36 securities at issue, purchased loans from different originators, and used different processes and disclosures. (Compl. ¶¶ 63, 67, 72.) The complaint is bereft of allegations that would support the existence of a Barclays-wide "scheme," much less allegations that could satisfy the heightened pleading requirements for fraud. The allegations the complaint does make are affirmatively inconsistent with the existence of a single "scheme," which requires dismissal of the complaint.

*Second*, even if the complaint had sufficiently pleaded a fraudulent "scheme," it does not sufficiently plead the individual elements of intent, falsity, and materiality for each securitization alleged to be part of that scheme. As to intent: although the complaint alleges that Barclays employees had a motive to increase its profits on the securities at issue, it is a familiar principle that a general profit motive is insufficient to plead fraudulent intent. Absent a valid motive, the complaint resorts to referencing snippets of conversations of two former Barclays employees, Paul Menefee and John Carroll. As to those employees, however, the complaint contains claims as to only seven of the 36 securitizations, and it mischaracterizes their e-mails and conversations in making those claims. For the remaining 29 securitizations, the complaint fails to allege facts that would give rise to a strong inference of fraudulent intent.

As to falsity and materiality: the complaint's central theory is that Barclays misrepresented that the loans in the securities at issue complied with originators' underwriting guidelines when its due-diligence vendors had flagged some of the loans as defective. The complaint concedes, however, that the vendors flagged many loans not because they violated underwriting guidelines, but for other reasons. (Compl. ¶¶ 177-78, 181 n.14, tbl. 7.) Notably, unlike in other similar actions, the complaint does not allege that the Government conducted any re-underwriting analysis to assess whether any of those loans—let alone a material number—were inconsistent with underwriting

The Honorable Kiyo A. Matsumoto -3-

guidelines. The complaint also alleges that Barclays made material misstatements about the values of the properties underlying the loans, but it does not allege that those values were objectively false; that the appraisers who provided those values subjectively believed them to be false; or that a material number of loans in any of the securities were inaccurately valued.

*Third*, the complaint fails to plead, as FIRREA requires, that the alleged predicate offenses "affected" federally insured financial institutions in the case of mail and wire fraud, 12 U.S.C. § 1833a(c)(2), or targeted other financial institutions in the case of bank fraud, 18 U.S.C. § 1344. The complaint does not allege (because it cannot) that any of the Barclays defendants is a federally insured financial institution. Instead, the complaint advances the novel theory that Barclays' sale of securities to a handful of *other* financial institutions "affected" those institutions because they were among the numerous purchasers of, or had some indirect involvement in, the relevant offerings. That is insufficient, as a matter of law, to establish the requisite effect. The complaint also fails to allege facts connecting any of the named financial institutions to any of the securitizations at issue.

*Fourth*, the complaint attempts to predicate FIRREA liability on two other statutes: 18 U.S.C. § 1005, which prohibits participation in fraudulent bank transactions, and 18 U.S.C. § 1014, which prohibits certain false statements to banks. But Section 1005 applies only to bank insiders, not entities such as Barclays, and Section 1014 applies only to false statements in bank-lending activities, not securities investments. Even if those statutes applied, the complaint does not sufficiently allege that Barclays violated them.

*Fifth*, the complaint names Barclays Group US Inc., Barclays US LLC, and Barclays PLC as defendants, but does not allege any facts about their conduct. Barclays PLC also is not subject to personal jurisdiction in the United States.

Barclays respectfully requests a pre-motion conference under Chambers Practice Rule IV.B. Barclays proposes to file its motion to dismiss 14 days after the conference. Barclays further requests that the Government be required to file its opposition brief 90 days thereafter and that Barclays be required to file its reply brief 45 days later. Because of the length of the complaint and the unprecedented nature of the Government's legal theories, Barclays respectfully requests leave to file an opening brief of no more than 65 pages and a reply brief of no more than 35 pages. Individual Defendants Menefee and Carroll will each file opening briefs of no more than 30 pages and reply briefs of no more than 10 pages. Defendants will consent to the Government's filing of a consolidated opposition brief limited to the total number of pages in defendants' opening briefs. Barclays has conferred with the Government on the proposed briefing schedule and page limitations, and the Government is in agreement with these proposals.

The Honorable Kiyo A. Matsumoto                                                                -4-

Respectfully submitted,

 *s/ Kannon K. Shanmugam*                              *s/ Karen Patton Seymour*

Kannon K. Shanmugam                              Karen Patton Seymour
(admitted *pro hac vice*)                              SULLIVAN & CROMWELL LLP
WILLIAMS & CONNOLLY LLP            125 Broad Street
725 Twelfth Street, N.W.                              New York, New York  10004
Washington, D.C.  20005                              Tel.:  (212) 558-4000
Tel.:  (202) 424-5000


cc: Counsel of record (via electronic filing)