

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 1, 2017

Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>*United States v. Barclays Capital, Inc.,* No. 16-CV-7057 (KAM/JO)</u>

Dear Judge Orenstein:

      Pursuant to Local Civil Rule 6.3, the United States respectfully seeks reconsideration of this Court's October 18 Memorandum and Order (ECF No. 101) (the "Order") denying the Government's October 3 Motion for a Protective Order (ECF No. 77).[1] As to the borrower non-notification provisions (paragraphs 54 and 55) of the parties' jointly-submitted proposed Protective Order (ECF No. 70-1), the Court overlooked the significant burden on the parties and especially on non-parties that requiring borrower notification would engender, as well as the limited extent to which the financial privacy interests of individual borrowers would actually be impinged by eliminating such requirements. Defendants and multiple objecting non-parties join the Government in this part of the motion for reconsideration, in which the parties once again respectfully ask the Court to approve paragraphs 54 and 55 in the form the parties jointly submitted on July 11.

      As to the privilege waiver provisions, the Government seeks reconsideration with respect to paragraph 57, respectfully submitting that the Court overlooked an applicable procedural rule that authorizes the Court to approve that paragraph in the form submitted; the Government does propose one small clarifying change to that paragraph in the attached new draft. Defendants take no position as to the Order's discussion of paragraph 57 but join the Government in submitting the attached new draft. As to paragraph 58, the parties are prepared to accept the Court's revisions insofar as that paragraph applies to them, but in light of objections received from Ocwen the parties ask the Court to retain the previously-proposed language where non-parties are concerned.

      ***Borrower Non-Notification***. In directing the parties to excise from paragraphs 54 and 55 language that relieves producing parties of obligations, found in the laws of several States, to notify individuals that certain information pertaining to their mortgage loans is being produced in the litigation, the Court overlooked the significant burden on the parties and especially on non-parties that requiring borrower notification would engender. In particular, the Court incorrectly assumed that because the Defendants undertook a general survey of the financial privacy laws of 56 States and

---

[1] The Court may grant a motion for reconsideration where it has overlooked facts, or controlling law or precedent, the consideration of which "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *see also Gigantino v. Turner Constr. Co.,* No. 14-CV-3619 (RRM)(RER), 2017 WL 3887868, at *1 (E.D.N.Y. Sept. 5, 2017).

Hon. James Orenstein
*United States v. Barclays Capital, Inc., et al.*, No. 16-CV-7057 (KAM/JO)
November 1, 2017
Page 2

territories, the results of which are reported in appendices to the parties' joint letter of July 11, the work of determining whether any notification provisions would apply to a particular loan or borrower is straightforward, and in fact has already largely been completed.

To the contrary, under the Court's proposed version of paragraphs 54 and 55, any party or non-party producing borrower information would have to make an individualized determination as to which jurisdictions' laws apply to that borrower and as to what if any notification such laws would require. These determinations are hardly straightforward, especially where the borrower no longer lives in the jurisdiction where the mortgage loan was extended (a common occurrence, given that the loans at issue in this case were mostly issued between 2005 and 2007) or no longer maintains the loan at issue (*e.g.*, as a result of foreclosure or payoff, also a common occurrence).

The burden of making such determinations would in the first instance be borne by the numerous third-party financial institutions, both servicers and originators, from which both sides have now subpoenaed over 16,000 mortgage loan files. Given that many of the laws in question impose financial liability on institutions that inappropriately disclose borrower information, there is no basis to assume that these non-parties would rely on the Defendants' general survey of State law, rather than retaining their own counsel to conduct individualized research that takes into account the facts of each specific loan. These determinations are time-consuming and expensive, and would need to be made as to *each* of the subpoenaed loans, not just the loans issued in the jurisdictions that have notification requirements applicable to this case, given the possibility that some borrowers may now live in jurisdictions that have applicable borrower notification provisions although the loans in question were issued in jurisdictions that do not. Considering the sheer number of loans at issue, and the difficulty of ascertaining in many cases where the borrower can even now be found, the magnitude of the burden associated with complying with these notification provisions is manifest.

Indeed, several of the third-party institutions from which the parties have subpoenaed loan files have advised us that, if the Protective Order were to be revised and entered as the Order directs, they would continue to object to the subpoenas on the grounds that compliance with state borrower notification requirements would be unduly burdensome, as would the burden of seeking "additional orders from this Court" before any file could be produced. We attach letters to this effect that we received from counsel for Citigroup, Bank of America, Ocwen, HSBC, and WMC.

Of course, the parties, too, would be burdened, insofar as the need to comply with borrower notification laws would significantly delay the production of the loan files and make it very difficult, if not impossible, to complete discovery within the times set by the Court. If non-parties stand on their objections, moreover, the parties would be required to devote considerable time litigating motions to compel subpoena compliance, engendering significant collateral litigation on a set of issues where the parties are not in dispute and do not even necessarily disagree with the objections that they would be attempting, through motion practice, to overrule.

Moreover, in concluding that "the benefits to [the parties] of being relieved of applicable notice requirements [do not] outweigh the burdens such a waiver would impose on non-parties who have not had an opportunity to be heard on the matter" (Order, at 3), the Court overlooked the limited extent to which the financial privacy interests of individual borrowers are actually implicated here. As a threshold matter, the parties have already exchanged, and currently possess, millions of documents,

Hon. James Orenstein
*United States v. Barclays Capital, Inc., et al.*, No. 16-CV-7057 (KAM/JO)
November 1, 2017
Page 3

and many terabytes of data, about these exact loans and borrowers (albeit in most cases not the actual loan files), including due diligence results, loan-tape data, and other non-public personal information. This information, like the information in the loan files the parties are now seeking, is subject to extraordinary confidentiality measures and other privacy safeguards laid out in the proposed Protective Order, minimizing the impingement of any financial privacy interests the borrowers may have. Moreover, while it is true that some "governments have seen fit to protect [borrowers] with laws requiring notice" (*id.*), those same governments have included statutory provisions allowing courts to dispense with those notice requirements precisely in circumstances such as those here. It is on this basis that courts adjudicating complex RMBS cases such as this have uniformly approved protective orders with language akin to what the parties here propose. *See* ECF No. 70-3, Annex 5.

***Privilege Waiver***. With respect to paragraph 57, the Court was concerned that the definition of "Privileged Material" is broader than what is allowed under Fed. R. Evid. 502(d), insofar as it subsumes "the deliberative process privilege, the executive privilege, the law enforcement or investigatory files privilege, or other applicable privilege or protection from disclosure." Order, at 4-5. Respectfully, the Court has overlooked the fact that it has authority under Fed. R. Civ. P. 16(b)(3)(B)(iv) to endorse "*any* agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502." The Rule's use of the phrase "claims of privilege" and the words "any" and "including" clearly give Rule 16(b) broader scope than Rule 502 and allow parties to enter into, and courts to approve, clawback agreements that extend to privileges other than the ones specifically enumerated in Rule 502. Moreover, the privileges the Court has proposed to excise from paragraph 57 belong exclusively to the Government, which would thus be prejudiced by their omission from the clawback agreement by being exposed to claims of subject matter waivers resulting from inadvertent productions of material covered by these governmental privileges. The Government therefore asks that the Court approve the proposed Protective Order without excising the language in paragraph 57 relating to privileges other than the attorney-client privilege or attorney work product protection. To avoid any concerns as to the Court's authority to approve a clawback agreement of that scope, the Government proposes to modify the introductory phrase of that paragraph to read "Pursuant to Federal Rule of Evidence 502(d) *and Federal Rule of Civil Procedure 16(b)(3)(B)(iv)*."

As for paragraph 58, the parties are prepared to accept the Court's directed changes with respect to production of material between or among them. But as the attached letter from Ocwen demonstrates, non-parties are situated quite differently, and would face significant burdens if subjected to an expectation of post-production privilege review. We therefore seek to retain the previously-proposed language of paragraph 58 where productions by non-parties are concerned.

We thus ask, together with Defendants and the non-parties who have weighed in, that the Court approve the attached new draft of the proposed Protective Order. We attach a redline showing the edits to paragraphs 57 and 58; there are no proposed revisions in this draft to paragraphs 54 or 55.

Hon. James Orenstein
*United States v. Barclays Capital, Inc., et al.*, No. 16-CV-7057 (KAM/JO)
November 1, 2017
Page 4

   We sincerely appreciate the Court's time and attention to this matter.

                Respectfully submitted,

                BRIDGET M. ROHDE
                Acting United States Attorney
                Eastern District of New York

       By:  /s/ {FILED ELECTRONICALLY}
                F. FRANKLIN AMANAT
                Senior Counsel
                MATTHEW R. BELZ
                CHARLES S. KLEINBERG
                EVAN P. LESTELLE
                JOSEPHINE M. VELLA
                ALEX S. WEINBERG
                Assistant United States Attorneys
                271A Cadman Plaza East
                Brooklyn, NY  11201-1820
                (718) 254-7000

Encls.: Revised Draft Proposed Protective Order
    Redline Showing Edits to Proposed Protective Order
    Letter from counsel for Citigroup, Inc.
    Letter from counsel for Bank of America, N.A. and Merrill Lynch, Pierce, Fenner & Smith, Inc.
    Letter from counsel for Ocwen Loan Servicing LLC
    Letter from counsel for HSBC North America, Inc.
    Letter from counsel for WMC Mortgage, LLC

cc (via ECF and email):  Counsel of record for all parties

cc (via email only):
   Susanna M. Buergel, Esq.
   Paul, Weiss, Rifkind, Wharton & Garrison LLP
   sbuergel@paulweiss.com
   *Counsel for Non-Party Citigroup, Inc.*

   Robin Bergen, Esq.
   Cleary Gottlieb Steen & Hamilton LLP
   rbergen@cgsh.com
   *Counsel for Non-Parties Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith, Inc.*

   Richard A. Jacobsen, Esq.
   Orrick, Herrington & Sutcliffe LLP
   rjacobsen@orrick.com
   *Counsel for Non-Party Ocwen Loan Servicing LLC*

Hon. James Orenstein
*United States v. Barclays Capital, Inc., et al.*, No. 16-CV-7057 (KAM/JO)
November 1, 2017
Page 5

    Damien Marshall, Esq.
    Boies Schiller & Flexner LLP
    dmarshall@bsfllp.com
    *Counsel for Non-Party HSBC North America, Inc.*

    Katya Jestin, Esq.
    Jenner & Block LLP
    kjestin@jenner.com
    *Counsel for Non-Party WMC Mortgage, LLC*