PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(212) 373-3553

WRITER'S DIRECT FACSIMILE
(212) 492-0553

WRITER'S DIRECT E-MAIL ADDRESS
sbuergel@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828 6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846 0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81 3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504 0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
ROSS A. FIELDSTON
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE

JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
DAVID M. KLEIN
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

October 30, 2017

By E-Mail and FedEx

Josephine M. Vella, Esq.
Assistant United States Attorney
Eastern District of New York
271A Cadman Plaza East
Brooklyn, NY 11201

*United States of America* v. *Barclays Capital, Inc., et al.*,
No. 16-cv-7057 (E.D.N.Y.)

Dear Ms. Vella:

   As you know, we represent non-party Citigroup Inc. ("Citigroup") in connection with Plaintiff's subpoena duces tecum dated September 12, 2017 (the "Subpoena"), in the above-referenced matter (the "Action").

   We write regarding the October 18, 2017 Memorandum and Order from Magistrate Judge Orenstein (Dkt. No. 101) (the "Order"), which rejected a critical provision of the parties' proposed protective order that would have relieved producing parties from the obligation of providing notice (as otherwise required by applicable privacy laws absent such an order) to mortgage borrowers whose personal or financial information may be included in documents produced in the Action. Because producing mortgage loan files or other borrower information in response to the Subpoena without such a provision would expose Citigroup—a third party to the Action—to significant and

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Josephine M. Vella, Esq.     2

untenable burdens and risks, as explained below, Citigroup intends to stand on its objections and will not produce the requested materials at this time.

### I.     The Subpoena and Order

As background, the Subpoena primarily seeks loan origination and servicing files with respect to 906 mortgage loans. The mortgages at issue were originated in 2005 and 2006 and relate to properties in 43 states across the United States.

On October 13, 2017, we served Citigroup's responses and objections to the Subpoena. Since we understood that a protective order had not yet been entered in the Action, Citigroup generally objected to the extent the Subpoena "seeks disclosure of documents or communications that contain . . . personal, financial or identifying information about any person (including, without limitation, information about mortgage loan borrowers)," and advised that "Citigroup will only produce documents containing such information pursuant to an appropriate protective order entered in the Action." (General Objection No. 8.) At the time, we understood that the parties had submitted a proposed protective order to the Court with customary provisions that routinely have been entered by other courts supervising similar litigations: provisions that relieve producing parties from any obligation to provide notice to mortgage borrowers. We expected that the parties' proposed order would be entered without significant changes.

However, you recently forwarded us a copy of the Order, which (among other things) rejected most of paragraph 55 of the parties' proposed protective order and directed the parties to submit a revised version. Specifically, the Order rejected language that would have "explicitly prohibited" any producing party "from providing notice to borrowers or other persons that Borrower Information pertaining to them has been disclosed in the Action" (Order at 2). Such provisions regarding borrower notice are necessary in light of statutory requirements in several U.S. jurisdictions that a producing party either notify the affected borrower or obtain a court order that excuses (or, in some cases, explicitly prohibits) such notice.

As the parties explained in their joint submission to the Magistrate Judge, discovery in the Action is likely to involve more than 20,000 loan files, and because the "statutes applicable to the tens of thousands of residential [mortgage] loans" at issue "are not uniform, to determine their applicability to each borrower in each state would be unduly burdensome." (Dkt. No. 70 at 3.) The parties further explained that absent a Court order that explicitly prohibits notice to borrowers, for each of thousands of individual borrowers, any party or non-party producing loan files would need to (a) determine the applicability of various state laws to a borrower whose information is contained in a given document, and then (b) attempt to locate and give notice to such borrowers where required. As a result of such burden, numerous courts have approved protective orders that prohibit notice in similar lawsuits. (Dkt. No. 70-3 at 5.)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Josephine M. Vella, Esq.  3

    The Order nonetheless rejected the parties' argument for prohibiting notice, finding "no basis to conclude that such burdens to the parties outweigh the deprivation of notice to borrowers," and stating that the parties had "provided no information about the burden they would shoulder in determining the jurisdiction whose laws would apply to a given borrower's information." (Order at 3.)

## II.  The Order Imposes Significant Burdens on Citigroup

    As explained below, the Order imposes significant burdens and risks on Citigroup (and, in all likelihood, many other similarly situated non-parties).

    *First*, the Order states that the "parties have already determined the potentially applicable laws of each pertinent jurisdiction." (Order at 3.) While we have no reason to doubt that the parties' counsel diligently researched and analyzed these laws, as counsel to Citigroup—a non-party to the Action, with its own independent legal and regulatory obligations—we cannot in good faith advise our client that it is appropriate to rely on legal research and analysis conducted by counsel to the parties in the Action. Thus, as a starting point, the task of ascertaining the legal requirements regarding borrower notice in at least 56 jurisdictions (comprised of 50 states, the District of Columbia, and five U.S. territories) would impose significant burden and expense.

    *Second*, while the Order asserts that "in most cases" an entity producing borrower information would need to "do no more than identify the applicable law" concerning borrower notice, in many cases, identifying the applicable law will not be a simple or straightforward task. As noted above, the Subpoena concerns 906 mortgage loans originated in 2005 and 2006. It is entirely possible that many borrowers now live in different states than the mortgaged properties, particularly given the intervening decade since the loans were originated, raising difficult choice-of-law issues. For example, is notice required where the mortgaged property is located in Oregon—a state the parties identified as having no applicable financial privacy statute—but the borrower currently lives in Alaska, a state that the parties believe requires notice unless a court expressly directs otherwise (Dkt. No. 70 at 2-3)? Such questions cannot begin to be answered without detailed factual and legal analysis—potentially as to dozens of combinations of various jurisdictions—which again would involve significant burden and expense.

    *Third*, the Order suggests that giving notice to borrowers would not be burdensome because "the laws of the United States and 46 other jurisdictions would not require any notification at all, while only ten other jurisdictions do have laws that might include notice requirements subject to waiver upon a court order." (Order at 3.) Again, as explained above, we would need to conduct independent research to determine the legal requirements in all jurisdictions, and it is entirely possible that the laws of more than ten jurisdictions require (or could potentially be construed as requiring) borrower notice.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Josephine M. Vella, Esq.     4

   The burden of attempting to give notice to individual borrowers would be enormous. Even for properties that are located outside the ten states identified in the Order, Citigroup would need to conduct extensive factual research and choice-of-law analysis to assess whether any of those ten states' notice requirements might nonetheless apply in a given situation. Thus, as a practical matter, Citigroup would need to review *each* of the 906 mortgages and associated borrowers in detail to determine whether notice may be required. And even apart from any choice-of-law issues, 249 of the 906 mortgages relate to properties in the ten states that (according to the parties' analysis) may have notice requirements; the burden of attempting to identify, locate, and give notice to all of these borrowers is significant in its own right.

   *Fourth*, the Order does not address instances where actual notice to a borrower is not possible or practical. Given the passage of time and number of mortgages at issue, it is highly unlikely that Citigroup (or any other producing party) would be able to give actual notice to each individual borrower, and producing borrower information under the Order would therefore require in-depth research of the laws in dozens of jurisdictions to determine what types of notice are deemed sufficient under the statutes, regulations and/or decisional law that might apply.

   *Finally*, the Order improperly assumes that the legal issues associated with borrower notice are simple and straightforward, and also overlooks the substantial exposure and penalties that may result from non-compliance with financial privacy laws. For example, a California statute authorizes civil penalties of up to $2,500 for each "negligent" violation—"irrespective of the amount of damages suffered by the consumer"—and up to $500,000 if information concerning "more than one individual" is disclosed. Cal. Fin. Code § 4057(a). The Alaska statute cited in the parties' submission provides that a "financial institution or any other person who violates" the section prohibiting disclosure without notice "is liable . . . for damages caused by the disclosure." Alaska Stat. Ann. § 06.01.028(f). In addition, borrowers could attempt to bring lawsuits challenging the absence or sufficiency of notice under various alternative theories (such as state unfair trade practices statutes). These and other similar penalties—to say nothing of the inherent burden and risk of litigation—are not merely theoretical. Such substantial penalties, the complexity and ambiguity of the laws themselves, and the enormous burdens of attempting to navigate the notice requirements with respect to hundreds or thousands of borrowers all underscore why courts handling similar litigations routinely enter protective orders that expressly prohibit the parties from providing notice to borrowers.

   For these reasons, Citigroup will not proceed to produce documents pursuant to the Subpoena at this time.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Josephine M. Vella, Esq.                                                      5

\*            \*            \*

Please let me know if you have questions about the issues above. We are available to discuss at your convenience.

Sincerely,

Susanna M. Buergel