

November 1, 2017

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000
orrick.com

F. Franklin Amanat
Senior Counsel
United States Attorney's Office
Eastern District of New York
271A Cadman Plaza East
Brooklyn, New York 11201-1820
franklin.amanat@usdoj.gov

**Richard A. Jacobsen**

E  Rjacobsen@orrick.com
D  +1 212 506 3743
F  +1 212 506 5151

Re:     Ocwen Letter Regarding Plaintiff's Subpoena and Magistrate Judge James Orenstein's
         October 18, 2017 Order in <u>United States of America v. Barclays Capital, Inc.</u>, No. 16-
         CV-7057 (E.D.N.Y.)

Dear Franklin:

        We represent nonparty Ocwen Loan Servicing, LLC ("Ocwen") in connection with
responding to the subpoenas (the "Subpoenas") issued by the Plaintiff United States of America
and the Defendants in the above-captioned action.  We write to provide additional information
regarding the undue burden and cost imposed by Plaintiff's subpoena in light of Magistrate
Judge James Orenstein's October 18, 2017 Memorandum and Order (the "Order").  In short, if
the case moves forward with the protective order as described in the Order, it will be unduly
burdensome and costly for Ocwen to comply with Plaintiff's subpoena.  Ocwen will therefore be
reluctant to move forward with producing responsive documents absent an agreement to shift
costs pursuant to Fed. R. Civ. P. 45(d), and an acknowledgement from Plaintiff that the
production may be severely delayed.

**<u>Background</u>**

        Ocwen is a mortgage loan servicer for thousands of RMBS securitizations.  In its role as
servicer, and in accordance with the relevant governing agreements, Ocwen generally maintains
the loan origination files ("Origination Files") and loan servicing files ("Servicing Files")
(together, the "Loan Files") for the loans that it services.

        As you know, Plaintiff served Ocwen with a subpoena on September 12, 2017.
Plaintiff's subpoena requested, in relevant part, that Ocwen produce the Loan Files for 12,432
loans in 27 different RMBS trusts listed on the Schedule B attached to the subpoena.  Following
a meet-and-confer, Ocwen served its responses and objections to the subpoena on October 10,
2017.  In these responses and objections, Ocwen agreed to produce the Loan Files concerning the



F. Franklin Amanat
November 1, 2017
Page 2

loans listed on Schedule B in Ocwen's possession, custody, or control, to the extent located through a diligent search, and subject to entry of a protective order acceptable to Ocwen.

On October 6, 2017, Defendants served Ocwen with a subpoena as well, requesting, amongst other materials, the same 12,432 Loan Files requested by Plaintiff. Ocwen will serve its responses and objections to Defendants' subpoena on November 10, 2017.

As discussed in more detail below, Ocwen is sending you this letter because Magistrate Orenstein's Order would impose significant costs and burdens on Ocwen in complying with Plaintiff's subpoena. The Order creates a protective order that is an outlier in a well-established body of law. At the time that Ocwen met-and-conferred with Plaintiff and agreed to produce Loan Files (subject to entry of a protective order acceptable to Ocwen), Ocwen could not have anticipated the effect the Order would have on Ocwen's production obligations. Ocwen has produced hundreds of thousands of Loan Files in connection with dozens of other RMBS actions in various jurisdictions (both federal and state), but in every other instance, the relevant protective orders have included provisions similar or identical to those originally put forth by the parties in this action and rejected by the Magistrate. Specifically, each of the protective orders in those other RMBS actions have protected Ocwen by (1) allowing Ocwen to produce Loan Files without individualized borrower notice or consent, (2) and ensuring that Ocwen would not waive the attorney-client privilege or work product protection for documents inadvertently disclosed without requiring Ocwen to undertake a very expensive privilege review (either pre-disclosure or post-production).

As you know, Plaintiff has requested over 12,000 Loan Files from Ocwen. Plaintiff has also reserved the right to request the production of loan files pertaining to more than 154,000 other loans at issue in the case, many of which may be serviced by Ocwen. It will be unduly expensive and burdensome for Ocwen to comply with Plaintiff's subpoena unless the Magistrate reconsiders his Order and includes in the protective order the provisions (1) allowing the production and use of borrower information (including Loan Files) without individualized borrower notice or consent (the "Borrower Information Provisions"), and (2) stating that the attorney-client privilege and work product protection are not waived if privileged material is disclosed inadvertently, and allowing for the disclosing entity to claw back such privileged material without needing to conduct a pre-disclosure or post-production review (the "Privileged Material Provisions").

Without these two provisions in the protective order, Ocwen will have to revisit its agreement to produce Loan Files. As a nonparty, Ocwen will be reluctant to produce any Loan Files absent an agreement to shift the immense costs associated with complying with the



F. Franklin Amanat
November 1, 2017
Page 3

Magistrate's Order pursuant to Fed. R. Civ. P. 45(d), along with an acknowledgement from Plaintiff that Ocwen will be unable to commit to any strict timetable for production.

## Borrower Information Provisions

Without the Borrower Information Provisions, Ocwen will incur significant burden and costs in researching and complying with various jurisdictions' notice and consent requirements.

First, while Ocwen understands that the parties have researched generally the various jurisdictions' notice and consent requirements, Ocwen will not be able to rely on this research prior to producing the Loan Files. While Ocwen cannot predict exactly what its obligations under the statutes would be, as the entity disclosing the Loan Files, Ocwen would probably be ultimately responsible for complying with all applicable state and federal laws regarding notice to the respective borrowers and/or obtaining the borrowers' consent, and could potentially face liability for any failures to give such notice or obtain such consent. Ocwen's counsel would therefore have to provide a detailed legal analysis for each borrower in each jurisdiction for which a Loan File has been requested, at Ocwen's expense. All 50 states, as well as Washington D.C., are represented in Plaintiff's request for the 12,432 Loan Files from Ocwen.

Ocwen would need to ensure that each notice incorporated the specific requirements of the relevant jurisdiction. Where a jurisdiction required the borrower's consent prior to disclosure of the Loan File, Ocwen would likely have to draft those forms as well. Ocwen would also probably have to draft different notices for different jurisdictions. This would take time.

Without performing the research, and without knowing how many of Plaintiff's requested Loan Files are in Ocwen's possession, custody, or control, or are serviced by Ocwen, it is not possible to determine exactly how many notices Ocwen would have to send. However, it is possible that if the Borrower Information Provisions are not included in the protective order, Ocwen would have to send notices to as many as 12,432 different borrowers around the country to let them know that their Loan File is being disclosed in connection with this action and, in some instances, request the borrower's consent prior to disclosure. While it is impossible to predict the cost of this task or how long it would take, it is almost certain that the process would be extremely expensive and would at least take many months. And, of course, Ocwen would not be able to disclose any of the Loan Files to Plaintiff until it was certain that the legal notice requirements had been satisfied or, where required, the borrower's consent was obtained.

Notably, even if the parties' research is correct (which, as discussed, Ocwen takes no position on but, at the very least, would need to confirm on its own in connection with individual borrowers in each jurisdiction), and Ocwen would need to give notice to and/or obtain consent



F. Franklin Amanat
November 1, 2017
Page 4

from only borrowers in the ten states identified by the parties, these ten states alone encompass 4,236 of Plaintiff's requested Loan Files. Thus, at minimum, it appears that Ocwen might have to send at least 4,236 notices to borrowers. While Ocwen is unable to accurately predict the time and cost of sending such notices, it would almost certainly be very expensive and would take months.

In addition, the amount of time this process could take would likely be further compounded by various other factors. For example, Ocwen would likely have to identify and locate all of the borrowers. While Ocwen has not reviewed all 12,432 loans on Plaintiff's Schedule B in depth, it is almost certain given the passage of time—the Loan Files requested from Ocwen are all around a decade old—that certain loans on Plaintiff's list are no longer active and Ocwen is no longer in monthly contact with the borrower. Ocwen may have foreclosed on the loan, the loan may have been paid off, or the borrower may have moved. Locating such borrowers—of which there may be thousands—to provide them notice of disclosure or obtain their consent would also likely be costly and time consuming.

Thus, in the event the Order stands, Ocwen would be reluctant to initiate the burdensome and expensive process of complying with the individualized borrower notice or consent requirements absent an agreement with Plaintiff to shift Ocwen's costs in doing so pursuant to Fed. R. Civ. P. 45(d). Further, given the unpredictability of Ocwen's obligations under the Order, Ocwen would not be able to commit to any specific timetable for production—to the extent Ocwen and Plaintiff reach an agreement for production, it may be months (or longer) before Ocwen would be able to produce any Loan Files in connection with the action.

### Privileged Material Provisions

Under the protective order created by the Order, Ocwen would be forced to conduct a privilege review of the Loan Files. As described below, this process would be extremely expensive and time consuming for Ocwen to undertake. Ocwen would therefore seek an agreement with Plaintiff to shift the costs it would incur in performing such a review and would be averse to producing Loan Files without such an agreement in place.

The Magistrate's Order has the effect of allowing Ocwen to produce the Loan Files without a pre-disclosure privilege review, but Ocwen would waive the privilege and work product protection over the Loan Files if it did not conduct a post-disclosure privilege review and seek the return of any inadvertently disclosed information. It is possible that communications protected by the attorney-client privilege and/or protected work product are present in the Loan Files, primarily in the form of communications between Ocwen and its foreclosure counsel. As Ocwen could not risk waiving the privilege or work product protection over such documents, the



F. Franklin Amanat
November 1, 2017
Page 5

Order would force Ocwen to undertake a review of the Loan Files for privilege. Such a post-disclosure privilege review, however, would be unduly burdensome and costly for Ocwen to undertake.

In Ocwen's experience, Origination Files are, on average, around 1,000 pages long. Thus, were Ocwen to locate all 12,432 of Plaintiff's requested Origination Files, Ocwen would be required to review almost 12.5 million pages of documents. Such a review would be expensive and burdensome.

The Servicing Files are actually more problematic. There would likely be one Servicing File for each loan, consisting in large part of Ocwen's servicing notes. These servicing notes often contain thousands of lines of text, any one of which may contain privileged communications. Reviewing these documents for privilege therefore requires reading each line of each servicing note. In the event privileged material were found, it may also require Ocwen to undertake a laborious redaction process, rather than withholding the Servicing File in its entirety. It is an incredibly time consuming and expensive process.

It is difficult to estimate the cost of such a monumental privilege review. Based on our knowledge of the contents of the Loan Files, we estimate that the average Loan File would take around ninety minutes to review, resulting in a total review of around 18,600 hours if Ocwen were able to locate all of Plaintiff's requested Loan Files. Even if Ocwen were to review only the Servicing Files—which are more likely to contain privileged information—each would likely take at least an hour.

Since Ocwen would not have sufficient personnel to conduct such a review on its own, it would likely have to engage an external vendor to complete the privilege review. Assuming such an external vendor billed at $80 an hour, the privilege review could cost Ocwen around $1.5 million for the first level review alone. Of course, the cost of the privilege review would likely be significantly more when other expenses are accounted for, such as inputting any technical requirements and the review of certain documents by more senior attorneys who bill at a higher rate.

As a nonparty, Ocwen should not have to submit itself to this undue burden or expense solely to protect itself from waiving the privilege. Thus, if the Magistrate's Order stands, Ocwen will likely only agree to produce Loan Files subject to an agreement with Plaintiff to shift the enormous costs of the privilege review pursuant to Fed. R. Civ. P. 45(d).



F. Franklin Amanat
November 1, 2017
Page 6

**<u>Conclusion</u>**

      As described above, Ocwen has tentatively agreed to produce Plaintiff's requested Loan Files, and has every intention of cooperating with the subpoena and with this litigation to the extent it is able to do so.  The Magistrate's Order, however, will make doing so unduly expensive and burdensome for Ocwen, a nonparty, and add months (if not years) to the time it would take Ocwen to produce the over 12,000 Loan Files currently requested (to say nothing of the parties' possible future requests for additional Loan Files).  For this reason, unless the Borrower Information Provisions and Privilege Review Provisions are included in the protective order, Ocwen will have to determine whether it is able to undertake the burden and cost of producing the Loan Files in response to the Subpoenas, and in any event, would likely not do so absent an agreement for cost-shifting pursuant to Fed. R. Civ. P. 45(d).

      We would be happy to provide you or the Court with any additional information or answer any other questions that would assist you or the Court moving forward.

                      Respectfully,

                      Richard A. Jacobsen /A. M. R.

                      Richard A. Jacobsen