```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,                    MEMORANDUM
                    Plaintiff,               AND ORDER
        - against -
BARCLAYS CAPITAL, INC., et al.               16-CV-7057 (KAM) (JO)
                    Defendants.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

For the third time, I address the parties' joint request to have me approve a stipulated protective order that would ease their litigation burdens but deprive non-parties, who have not had an opportunity to be heard, of rights that they would otherwise have. As briefly explained below, for the third and final time I deny the request.

I.  Background

I assume the reader's familiarity with the record. In short, the parties first submitted their proposed protective order on June 7, 2017. Docket Entry ("DE") 55. I declined to approve it for two reasons: first, its terms relieved the parties of their obligations under the laws of several jurisdictions to notify non-party borrowers of the disclosure of information about them; second, it conferred on the parties overbroad protections against the disclosure of otherwise privileged information that could be avoided through due diligence. *See* DE 61 (minute order dated June 12, 2017); DE 62 (transcript).

On July 11, 2017, the parties submitted a revised proposal that partially addressed the latter concern about the privilege provisions and that asked me to reconsider my initial decision about the disclosure provisions. *See* DE 70 (letter); DE 70-1 (proposed order); DE 70-2 (redline comparison showing changes) at 22-24. In a Memorandum and Order dated October 18, 2017, DE 101 (the "Order"), I denied the request to reconsider the decision about the disclosure provisions, explained

why the revisions concerning the waiver of privilege did not suffice to alleviate my concerns, and directed the parties to submit a revised protective order that conformed to those rulings.

Instead of complying with that Order, the parties again moved for reconsideration. *See* DE 102 ("Motion"). Because their earlier request for reconsideration was not styled as that kind of motion for understandable reasons (when I initially expressed my concerns about the proposal, I invited further input from the parties), I will not reject the instant motion as a procedurally improper successive motion for reconsideration, notwithstanding the reality that the parties simply seem unwilling to accept a ruling I have already carefully considered twice. Instead, I will consider the merits of the parties' proposals for the third time, as well as their contention that I overlooked certain matters in my earlier rulings.

II. Discussion

  A. Reconsideration

The law of this jurisdiction disfavors motions for reconsideration, and requires that they be denied absent a showing that the court overlooked controlling decisions or facts. If instead of making such a showing, the movant simply rehashes earlier arguments or tries to rely on new facts not previously presented, the motion must be denied. *See, e.g., DirecTV, LLC v. Borbon*, 2015 WL 7281636, at *1 (E.D.N.Y. Nov. 16, 2015) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995))). Reconsideration is not available where a party "is attempting belatedly to plug the gaps of its prior motion." *Id.* at *2.

  B. Notice to Borrowers

The parties assert that with respect to borrower notification, I "overlooked the significant burden on the parties and especially on non-parties that requiring borrower notification would engender, as well as the limited extent to which the financial privacy interests of individual

borrowers would actually be impinged by eliminating such requirements." Motion at 1. That is untrue. *See* DE 70 (letter dated July 11, 2017, describing the burdens associated with notification and the extent to which borrowers' privacy interests would be impinged by eliminating applicable notification requirements); DE 70-3 (attachment to July 11 letter detailing the financial privacy statutes of various jurisdictions); Order at 3 (explicitly addressing the asserted burdens). To the extent that the parties now rely on letters from non-party subpoena recipients attesting to the burdens attendant to complying with their disclosure obligations, their reliance is misplaced for two reasons. First, I did not overlook the letters, which were not presented to me. Second, the letters do no more than amplify the concern about burdensomeness that I had already taken into account. *Compare* DE 77-1 (objections to subpoena from non-party WMC Mortgage, LLC ("WMC"), including objection to the burden of compliance, appended to letter in support of the parties' first request for reconsideration) *with* DE 102-7 (letter from WMC further describing such burdens, appended to letter in support of the parties' second request for reconsideration); Order at 3.

The parties further assert that I "incorrectly assumed that because the Defendants undertook a general survey of the financial privacy laws of 56 States and territories … the work of determining whether any notification provisions would apply to a particular loan or borrower is straightforward, and in fact has already largely been completed." Motion at 1-2. The parties go on to contrast that characterization of my Order with the following purported refutation of it: "To the contrary, under the Court's [Order[1]], any party or non-party producing borrower information would have to make an individualized determination as to which jurisdictions' laws apply to that borrower and as to what if any notification such laws would require." *Id.* at 2. In so writing, the parties implicitly assume that I did not contemplate the likelihood that, having determined the array of potentially applicable state

---

[1] The parties inexplicably describe the Order they ask me to reconsider as a "proposed version" of a protective order. *Id.* at 2. That Order, like this one, is not a proposal, and the parties were not invited to treat it as merely a bargaining position. Rather, the parties sought and received a ruling.

and federal statutes, those tasked with disclosing borrower information would then have to determine which of those laws applied to each particular disclosure. Here again, the parties' contention is simply untrue: I explicitly took that additional step into account and noted that the parties had provided no information about the burden associated with it. *See* Order at 3 ("The parties … have provided no information about the burden they would shoulder in determining the jurisdiction whose laws would apply to a given borrower's information.").

The fact that the parties have now made an argument about that burden does not suffice to warrant reconsideration for two reasons. First, in order to promote judicial economy by "ensur[ing] the finality of decisions," reconsideration is not available to allow parties to "plug the gaps" of an earlier insufficient motion. *DirecTV, LLC v. Borbon*, 2015 WL 7281636, at *2 (quoting *Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan 18, 2000)). Second, while the parties now make the conclusory assertion that such individual review would be burdensome, they simply instruct me that the magnitude of the burden is "manifest[,]" Motion at 2, rather than providing any specific information. Moreover, the parties' arguments rests to an important degree on speculation:

> Given that many of the laws in question impose financial liability on institutions that inappropriately disclose borrower information, there is no basis to assume that these non-parties would rely on the Defendants' general survey of State law, rather than retaining their own counsel to conduct individualized research that takes into account the facts of each specific loan.

*Id.*

It may well prove to be true that some subpoena recipients will undertake individual file reviews to ensure that they comply with multiple state laws, rather than finding some more efficient way to determine which laws apply to which borrowers; it may also prove to be true that such burdens will unduly outweigh the benefits of notification in some cases. Should that prove to be the case, individual subpoena recipients are of course free to seek targeted relief pursuant to Federal Rule of Civil Procedure 26(c). And should any subpoena recipient unduly delay compliance with its

4

lawful disclosure duties, the party issuing the subpoena is of course free to make a motion to compel. What is not appropriate, however, is to impose burdens on non-party borrowers, who have not had an opportunity to be heard on the matter, by depriving them of their right to notifications that the laws of their jurisdictions have given them simply to relieve the parties and the subpoena recipients of the obligation to discharge litigation duties they would rather avoid.

    C.    <u>Privilege</u>

In seeking reconsideration of my prior ruling as to privilege waivers, the parties write that I "overlooked [my] authority … to endorse 'any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502.'" Motion at 3 (quoting Fed. R. Civ. P. 16(b)(3)(B)(iv)). It is certainly true that I did not explicitly discuss that authority in my ruling, nor indeed did I give the cited rule any thought. The parties likewise were wholly silent on the existence or applicability of that rule until they cited it for the first time in the instant request for reconsideration. That alone is a reason to disregard the argument now.

But even disregarding the parties' procedural lapse, I would not reconsider my earlier ruling based on the misguided notion that Rule 16 gives me authority that Rule 502 does not to curtail the rights of non-parties with respect to the parties' privilege waivers. The parties' argument suffers from multiple flaws. First, the cited provision of Rule 16 empowers the court to issue a scheduling order that addresses certain matters, but by its terms it does not independently authorize a court to enter an order – as Rule 502 does – that restricts the rights a non-party would otherwise have to assert that the handling of privileged information in this litigation effected a waiver of that privilege.

Second, the parties' argument ignores the history of Rule 16. Prior to December 1, 2006, the rule was silent with respect to privilege waivers. *See* Fed. R. Civ. P. 16 (as amended Apr. 22, 1993, eff. Dec. 1, 1993). The 2006 amendment added a new provision that a scheduling order could

include "any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after production[.]" Fed. R. Civ. P 16(b)(6) (as amended Apr. 12, 2006, eff. Dec. 1, 2006). In explaining that amendment, the Advisory Committee on Civil Rules wrote as follows:

> Rule 16(b) is also amended to include among the topics that may be addressed in the scheduling order any agreements that the parties reach to facilitate discovery by minimizing the risk of waiver of privilege or work-product protection. Rule 26(f) is amended to add to the discovery plan the parties' proposal for the court to enter a case-management or other order adopting such an agreement. The parties may agree to various arrangements. For example, they may agree to initial provision of requested materials without waiver of privilege or protection to enable the party seeking production to designate the materials desired or protection for actual production, with the privilege review of only those materials to follow. Alternatively, they may agree that if privileged or protected information is inadvertently produced, the producing party may by timely notice assert the privilege or protection and obtain return of the materials without waiver. Other arrangements are possible. In most circumstances, a party who receives information under such an arrangement cannot assert that production of the information waived a claim of privilege or of protection as trial-preparation material.

Fed. R. Civ. P. 16, advisory committee's note.

Thus, as amended in 2006 – when Rule 502 did not yet exist– the topics that a court could address at the outset of litigation expressly included private agreements among the parties to define their respective rights concerning assertions of privilege. But that codification of powers that courts had always had did nothing to fix a different problem of growing significance to litigants in the age of digital discovery: the fact that such private agreements among the parties to one case did nothing to limit their exposure to the claims of non-parties outside the confines of the litigation. And it was precisely to address the latter problem that Congress mandated the promulgation of Rule 502 in 2008. *See* Pub. L. 110-322, 122 Stat. 3537 (2008); Fed. R. Evid. 502, advisory committee's note (noting that one of the new rule's two "major purposes" is to control increasing litigation costs due to the electronic storage of records and the limited "utility of a confidentiality order in reducing discovery costs … if it provides no protection outside the particular litigation in which the order is entered"). Rule 502 alleviated that problem by providing for protective orders that are effective in all

6

proceedings, not just as among the parties in a particular case – and once that rule was in place, the provision of Rule 16 addressing agreements concerning privilege waivers was of course amended to reflect that development. But what the latter amendment did not do was expand the scope of Rule 502 to reach types of privileges the evidentiary rule did not address. *See* Fed. R. Civ. P. 16, advisory committee's note (describing 2015 amendment to Rule 16(b)(3)(B): "The order also may include agreements incorporated in a court order under Evidence Rule 502 controlling the effects of disclosure of information covered by *attorney-client privilege or work-product protection*, a topic also added to the provisions of a discovery plan under Rule 26(f)(3)(D).") (emphasis added).

Thus, to the extent the parties contend that I failed to appreciate that Rule 16 empowers me to tell non-parties that they cannot assert a waiver of privileges other than those addressed in Rule 502, they simply misread both the rule's text and its history. The parties understandably said nothing about Rule 16 the first two times they asked me to approve an overbroad protective order – because that rule does nothing to support their request. By making the argument for the first time on a motion for reconsideration, the parties compound a substantive mistake with a procedural one.

To the extent that the parties ask me to reconsider my Order with respect to the burden it imposes on non-parties, *see* Motion at 3, the request is procedurally improper because it raises a new argument for the first time. Moreover, the relief they seek seems entirely unwarranted. The parties would have me order as follows:

> Any disclosure in this Action by any Non-Party of any Document or Discovery Material that constitutes, contains, or reflects Privileged Material shall be regarded as inadvertent, and the Producing Non-Party shall be deemed to have taken reasonable steps to prevent disclosure, regardless of the standard of care or the specific steps taken to prevent disclosure and regardless of any argument or circumstances suggesting otherwise.

DE 102-1, ¶ 58 (proposed order).

That language, if adopted, would require everyone – not just the parties who have agreed among themselves, but also non-parties who have not had an opportunity to be heard – to treat

7

even an intentional disclosure of privileged information by a non-party subpoena recipient as an inadvertent lapse made after reasonable efforts to guard against such disclosures. The interest in efficient discovery procedures does not justify such pretense. Rule 502 strikes an appropriate – and congressionally enacted – balance between competing interests. It promotes speedy and efficient discovery procedures by allowing an orderly privilege review to occur after disclosures have been made; it does not relieve parties altogether of the duty to take reasonable steps to safeguard the information as to which they wish to continue to assert a valid privilege.

I am wholly in favor of adopting procedures that promote the efficient litigation of this case, and I appreciate that even the most efficient measures may be quite burdensome. To the extent those burdens may be unduly heavy when imposed on non-party subpoena recipients, such entities are of course free to seek targeted relief, such as a restriction on the scope of documents they must produce (which would in turn diminish the burden of reviewing responsive documents). *See* Fed. R. Civ. P. 26(c). But that interest in efficiency does not mean that I can or should shift the burdens or risks of this litigation to non-parties who may have a legitimate interests that would be hampered by the relief the parties seek here and who have not had the opportunity to oppose them. I therefore deny the request for reconsideration of my earlier ruling with respect to privilege waivers.

III. Conclusion

For the reasons set forth above, I deny the motion for reconsideration. I respectfully direct the parties to submit a revised protective order consistent with this ruling, and with my ruling of October 18, 2017, no later than November 10, 2017.

SO ORDERED.

Dated: Brooklyn, New York
November 2, 2017

/s/
James Orenstein
U.S. Magistrate Judge